In the Matter of J. SELIG MAISEL, an Attorney, Respondent.

First Department, January 10, 1930.

*Einar Chrystie*, for the petitioner.

*Herbert C. Smyth*, for the respondent.

DOWLING, P. J. The respondent was admitted to the bar in May, 1924, in the New York Supreme Court, Appellate Division, Second Department.

The petition herein sets forth two charges. The first charge is in substance that the respondent without authority signed the name of J. Joyce Klinger on a paper purporting to be a satisfaction of a mortgage and thereafter as notary public signed a certificate indorsed thereon in which he falsely certified that Klinger had personally appeared before him and acknowledged the execution of the document.

The second charge is in substance that when Klinger applied for admission to the bar of the State, the respondent appeared before the committee appointed by the court to investigate the character and fitness of applicants and falsely stated to the committee that Klinger had in fact signed the satisfaction referred to in charge 1,

and that he had acknowledged such execution before respondent as notary public.

The answer made a technical denial of the first charge, with the explanatory plea that, although respondent signed Klinger's name without specific previous authority and took his acknowledgment without his personal appearance, yet he had no criminal or wrong intent in so doing because Klinger was a mere dummy for him in the transaction and had ratified his act, and a proceeding based thereon in the City Magistrates' Court was dismissed.

The second charge was also technically denied, with the explanatory plea that, although respondent's statements to the committee on character and fitness were not true in a literal sense, he made them without any intent to deceive the committee, that he believed he was again being accused of forgery after that issue had been disposed of and, losing his self-possession, he stupidly answered the committee's question as he understood their inward purport and in the light of the legal effect of all that had previously occurred.

The charges were referred to one of the official referees, who has reported that the charges have been sustained.

The record shows that from February, 1925, to December 15, 1926, Klinger, a law student, was employed as a clerk in the respondent's office. While so employed he at times acted as what is sometimes called a " dummy " for the respondent and his clients in various transactions. In one of these transactions the respondent caused Klinger's name to be inserted as mortgagee in a mortgage representing an investment made in behalf of his sister. Some time after he left the respondent's employ Klinger learned of the existence of a forged certificate of satisfaction of this mortgage, and after consulting with his friends he caused a summons to be served upon the respondent in a proceeding brought in the Magistrates' Court of the City of New York in which Klinger charged that the respondent had forged his name on the certificate. When the matter was brought up in the Magistrates' Court, just prior to the formal proceeding, a conversation took place among the magistrate, Klinger, respondent's attorney, and another attorney, in which the transaction was explained in detail to the magistrate, at the close of which Klinger expressed himself as being satisfied with what had been done. The record in the Magistrates' Court discloses the following disposition of the matter there: " Mr. Klinger: * * * I felt that a crime had been committed, but now, after what Mr. Kirschstein has said in explanation that no crime has been committed, I leave it to your Honor — The Court: In fact, you were a dummy in the transaction? Mr. Klinger: Yes. The Court: And he was the real party in interest? Mr.

Klinger: So I believe. The Court: Nobody has been defrauded and . nobody lost a dollar? Mr. Klinger: That is right. The Court: The matter is dismissed."

On the stand before the referee the respondent admitted that he signed the name of Klinger to the satisfaction of mortgage and signed his own name as notary to the acknowledgment. His excuse for his act was that he had invested the money of his sister in a mortgage upon property owned by a development company, which mortgage was assigned to Klinger; that the mortgage was supposed to be due, and his sister was about to get married and he wanted to get the money to turn over to her. He also was afraid that the development company might get into difficulties with the Attorney-General's office, as the Attorney-General at that time was investigating such enterprises; that he finally induced the development company to pay the mortgage and he must necessarily have the satisfaction of mortgage ready when such payment was to be made; that he made diligent efforts to get in touch with Klinger to execute the satisfaction of mortgage but was unable to do so, and to prevent further delay and the possible loss of the money, he signed the name of Klinger to the satisfaction of mortgage and signed his own name as notary to the acknowledgment.

The record discloses that although respondent knew where Klinger lived and where he was employed, he did not send a letter or telegram to either place advising Klinger; that Klinger spent every night at home during this period, and that on one occasion, early in January, 1927, Klinger called at respondent's office, at which time nothing was said by the respondent about the necessity of executing a certificate.

As to the second charge, the record discloses that when Klinger applied to this court for admission to the bar, in the questionnaire filed by him with the committee on character and fitness, he referred to the fact that he had instituted a criminal proceeding against the respondent charging him with forgery. Klinger also filed a character affidavit verified by respondent, in which respondent recommended Klinger for admission to the bar. When Klinger appeared before the committee, upon being questioned, he repeated in substance the charge that his signature on the certificate was a forgery placed thereon by the respondent. The committee on character then requested respondent to appear before it. He did so and then testified that he did not sign Klinger's name to a satisfaction of a mortgage, and Klinger's statement that he, respondent, had forged his, Klinger's, name, was not true. The following is an extract from a transcript of the record of the testimony given by respondent

before the character committee: " Q. Who signed the satisfaction piece in his name? (Respondent.) A. Well, I believe that he signed various papers, he signed himself. Q. You are prepared to testify that he signed the satisfaction piece himself which you acknowledged as a notary? A. Well, you mean— Q. Exactly what I say, sir. That is very plain. He says that you forged his name to this satisfaction piece and that you affixed an acknowledgment to the satisfaction piece as notary, certifying that he had appeared before you and acknowledged that signature. Now, did he appear before you and acknowledge the signature? A. Well, he signed various — Q. Did he sign that satisfaction piece? A. Yes. Q. And then your certificate was true? A. Yes."

Before the referee, respondent offered the following explanation of his testimony before the character committee: " When I was called in, when the question was proposed to me about forging and signing, I immediately lost my head, feeling that they are trying to pin another charge of forgery upon me. I tried to explain to the committee about the ratification in the Magistrates' Court and all the dealings I had had with Klinger leading up to my signing this satisfaction, but I thought they were pressing upon me the forgery charge and I at the time actually lost my head and felt they were trying to pin another charge of forgery upon me. I did answer no, that Klinger signed his name, meaning that it was a ratification, although I signed it, and Klinger ratified it. I had no intention of deceiving the committee, or denying to the committee that I did not sign it, because the matter in the Magistrates' Court was a public record, and I knew that Klinger had to put it in his petition in order to get his admission, and knowing that I had given him an affidavit of character, I couldn't lie there, and I had no intention of lying, but completely losing my head, and not knowing what I said — the minutes show that I denied that I had signed it, but really meaning that I had signed it with ratification by Klinger."

Respondent and his counsel testified that when they later attempted to correct his " misstatements " before the committee they found that the committee had adjourned. There is no evidence, however, of any attempt to communicate with the chairman or any other member of the committee to explain the situation.

Section 885 of the Penal Law provides: " An officer authorized to take the proof or acknowledgment of an instrument which by law may be recorded, who wilfully certifies falsely that the execution of such an instrument was acknowledged by any party thereto, or that the execution of any such instrument was proved, is guilty of forgery in the first degree."

In this proceeding emphasis has been laid upon the fact that no one was injured as a result of the respondent's act. In *Matter of Hawes* (169 App. Div. 644; affd., 217 N. Y. 602) this court, in a *per curiam* opinion, said: " While it is true that in the particular cases above discussed no harm seems to have come to any one in consequence of the respondent's acts, yet we cannot allow that circumstance to stand in the way of the performance of the duty which we owe to the profession and the community."

In the present proceeding the respondent has been proven to be absolutely devoid of the elementary principles of honesty or truthfulness. He first forged the name of his former clerk to the satisfaction piece of the mortgage which stood in the name of that clerk. There is not the slightest evidence that he ever tried to reach his clerk to get him to sign the satisfaction piece or that the clerk would have delayed or refused to sign it when requested to do so. The clerk was at all times within easy reach of respondent, who knew his address but made no attempt to get in touch with him. Having forged the signature to the satisfaction piece, he then made a false certificate of the clerk's appearance before him and his acknowledgment of the execution of the assignment, in itself a second crime of forgery under the statute. Not content with these crimes, he testified falsely before the committee on character and fitness by stating that the clerk had actually signed and acknowledged the satisfaction piece, both statements concededly false. The result of the acceptance of his testimony by the committee would have been to prevent the clerk from being admitted to the bar for all time.

Such a person is manifestly unfit to be a member of the legal profession, and he should be disbarred.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent disbarred.